UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**RHINO RUSH, LLC,**<br><br>    Debtor. | Case No. 19-00302-TLM |
| **RHINO RUSH, LLC,** Debtor in Possession,<br><br>    Plaintiff,<br><br>v.<br><br>**RAW PHARMA, LLC,** a Utah limited liability company; **RHINO RUSH, LLC,** a Texas limited liability company; and DOES 1-25,<br><br>    Defendants. | Adv. Proc. No. 19-06019-TLM |

## MEMORANDUM OF DECISION

Rhino Rush, LLC, an Idaho limited liability company ("Debtor"), filed a petition under chapter 11 at approximately 3:00 p.m. on March 22, 2019, commencing this case.[1] Later that same day, Debtor filed the complaint commencing Adversary Proc. No.

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11, U.S. Code §§ 101—1532, and Rule citations are to the Federal Rules of Bankruptcy Procedure.

(Continued)

MEMORANDUM OF DECISION - 1

19-06019-TLM.  Debtor is suing Raw Pharma, LLC ("Raw Pharma") and Rhino Rush, LLC, a separate entity with a name identical to Debtor's.[2]  The Complaint, Adv. Doc. No. 1, "seeks injunctive relief restraining Raw Pharma, LLC, from continuing to exert dominion and control over the assets of the Debtor and requiring Raw Pharma, LLC, to return assets already taken and/or liquidated by Raw Pharma, LLC."  *Id.* at 2.

Tersely summarized, the Complaint asserts Debtor and Raw Pharma entered into a contractual relationship in 2014, under which Debtor would manufacture "energy shots" and energy drinks for sale and distribution by Raw Pharma.  In 2017, after a default alleged by Raw Pharma, the parties entered into a "Forbearance Agreement and First Amendment to Manufacturing and Supply Agreement."  *Id.* at Ex. A, p. 18—28 ("Forbearance Agreement").  In March 2019, Raw Pharma determined, and asserted, that Debtor was in default under this Forbearance Agreement.  Meetings started on March 11 between Jesse McMullin and Mark Clark of Raw Pharma and Jeremy Swenson of Debtor.[3]  Debtor alleges Raw Pharma's representatives persuaded Jeremy Swenson to execute a "power of attorney" giving control of Debtor to Raw Pharma, and to do so after several hours of meetings and pressure, and before he had the opportunity to contact his brother Josh Swenson, Debtor's president and CEO.  *Id.* at Ex. C, p. 36—41 ("Power of Attorney").[4]

---

[2]  Debtor calls this entity "TX Rhino Rush" in the Complaint.

[3]  Certain documents attached to the Complaint are executed by Jeremy Swenson as a "member" of Rhino Rush and its Chief Technical Officer.

[4]  Though signed on March 11, this document was expressly made effective as of March 1, 2019.  *Id.*

MEMORANDUM OF DECISION - 2

Josh Swenson returned to Boise later on March 11 and the parties continued meeting. Ultimately, on that same day, Jeremey and Josh Swenson executed on behalf Debtor a "Voluntary Asset Surrender and Transfer Agreement," *id.* at 42—55, a "General Assignment and Bill of Sale," *id.* at 56—58, and a "Copyright, Trademark and Domain Name Assignment Agreement," *id.* at 59—66. The Swensons also executed personal guaranties, *id.* at 67—68, and letters to third parties addressing the transfer of Debtor's assets, *id.* at 69—70.[5] Collectively, the Complaint calls all these the "Transfer Documents." Debtor also alleges Raw Pharma's representatives and counsel did not allow the Swensons to review the Transfer Documents prior to signing them, or to have those documents reviewed by or discussed with Debtor's counsel.

The Complaint alleges three causes of action. First, Debtor seeks imposition of an injunction prohibiting Raw Pharma's "continued dominion and control" of Debtor's business. *Id.* at 11—12. (This request is elaborated upon by Debtor's Ex Parte Motion, discussed *infra*.)

Debtor, in its role as debtor in possession, also alleges two other causes of action: that the prebankruptcy transfer of assets to Raw Pharma pursuant to the Transfer Documents was a preferential transfer under § 527(b) or, alternatively, was a fraudulent transfer under § 548. *Id.* at 12—15.

In connection with Debtor's first cause of action seeking injunctive relief and immediately after filing the Complaint, Debtor filed an "Ex Parte Motion for Entry of a

---

[5] These documents were similarly made effective as of March 1, 2019 though executed on March 11.

MEMORANDUM OF DECISION - 3

Pre-judgment Writ of Attachment or Temporary Restraining Order/Motion for Preliminary Injunction." Adv. Doc. No. 2 (the "Ex Parte Motion"). The Ex Parte Motion seeks "a pre-judgment writ of attachment or temporary restraining order, setting a show cause hearing and an injunction restraining Defendants . . . from further control or liquidation of Rhino Rush's assets and requiring [Defendants] to return assets is [sic] improperly received and account for all assets received since March 11, 2019." *Id.* at 1—2. Those assets are further specified as "[a]ll assets of [sic] previously owned by Rhino Rush, LLC, including without limitation all right, title and interest in" a sweeping list of assets including copyrights and other intellectual property; inventions, processes and patents; proprietary and confidential information; databases and technical information; logos, trade names, trade dress, etc.; domain names and web addresses; accounts; chattel paper; deposit accounts; instruments; inventory; investment property; equipment; and proceeds thereof. *Id.* at 10—11.

The Ex Parte Motion is made under § 105(a), Rules 7001(7), 7064 and 7065, Fed. R. Civ. P. 64 and 65, and Idaho statutes made relevant by case law. *See id.* at 2—3. The Ex Parte Motion is supported by the affidavits of the Swensons and Debtor's bankruptcy counsel. Adv. Doc. Nos. 2-1, 2-2, and 2-3.

While there is no certificate of service on the Ex Parte Motion, the affidavit of Debtor's bankruptcy counsel asserts that on March 22 he did provide a copy of the Complaint, the Ex Parte Motion, and all supporting documents to the Defendants via U.S.

MEMORANDUM OF DECISION - 4

Mail, and copies to two Idaho attorneys Debtor believes represent Defendants. Adv. Doc. No. 2-3 at 2.[6]

The Court has evaluated all the submissions made. It concludes that entry of an ex parte writ of attachment or other equitable injunctive relief is not warranted on the submissions made by Debtor.

The factual allegations of Debtor's Complaint, reduced to their fundamentals, indicate that when Debtor was facing a business dispute with Raw Pharma, a primary supplier and creditor, Debtor's members and officers agreed to execute, and did in fact execute, documents transferring control of Debtor's business, assets and operations to Defendants. About 11 days after that event, Debtor filed a chapter 11 case and seeks emergency, ex parte injunctive relief. The suggested injunctive relief would prohibit Raw Pharma's control of assets transferred to it by Debtor, including liquidation of the same; require Raw Pharma to "account for all assets received since March 11"; and to "return assets it improperly received" from Debtor (which, given the Complaint, presumably consists of all assets transferred to or acquired by Raw Pharma by reason of the March 11 documents).

Debtor does not directly contend that the Transfer Documents are ineffective or unenforceable.[7] But to seek injunctive relief to affirmatively force the "return [of] assets

---

[6] At 9:33 p.m. on March 26, a response to the Ex Parte Motion was filed by Defendants. Adv. Doc. No. 5. It has been reviewed.

[7] Indeed, Debtor necessarily contends that they were effective when it argues that they constituted prepetition transfers avoidable as preferences or fraudulent transfers under §§ 547 and 548.

MEMORANDUM OF DECISION - 5

[Defendants allegedly] improperly received" can have only two contexts under Debtor's submissions.

    First, Debtor could be asking for a prejudgment writ of attachment (or some similar injunctive relief) to secure recovery should Debtor be successful in litigating the preference or fraudulent transfer claims.  Debtor has made no showing, at this stage, of a likelihood of success, as there are clearly factual and legal issues implicated.[8]  Nor has Debtor shown Defendants' inability to satisfy a judgment that might be obtained on such causes.  Debtor has not, by its submissions, established a basis for the Court to grant such a prejudgment writ to secure collection on what is, as yet, a hypothetical judgment.

    A second possible context for the requested injunctive relief is derived from the narrative laid out in the Complaint, which does not deny that the Transfer Documents were signed, nor suggest the documents are not on their face valid and effective.  Rather, the Complaint seems to allege that the conditions and circumstances under which the documents were executed provides a potential avenue for relief.  The tenor of that argument emphasizes that, because Debtor is now a debtor in possession in a chapter 11 proceeding, the interests of all its creditors support allowing Debtor to retake those assets, operate its business, and propose a reorganization plan (which it admits it hasn't yet "formulated" but "anticipates . . . will adequately and fairly provide for Raw Pharma's allowed claim" and, absent which, "all remaining creditors of the Debtor . . . would not

---

    [8] The Court should avoid, in considering issues of preliminary injunctive relief, "decid[ing] doubtful and difficult questions of law or disputed questions of fact." *Marina Vape, LLC v. Nashick*, 2016 WL 9086939 *8 (C.D. Cal. May 6, 2016) (quoting *Internat'l. Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (internal citation omitted)).

MEMORANDUM OF DECISION - 6

be paid anything on their claims.") Adv. Doc. No. 1 at 11—12.  It argues that "[t]he interests of all of Debtor's creditors are better served by the entry of the requested injunctive relief." *Id.* at 12.

Debtor invokes § 105(a) as authority for this relief.  Ex Parte Motion at 2.  That section recognizes the Court's ability to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Debtor also notes that *Solidus Networks, Inc. v. Excel Innovations (In re Excel Innovations, Inc.)*, 502 F.3d 1086 (9th Cir. 2007), recognizes the Court's "power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay but 'threaten the integrity of a bankrupt's estate.'" *Id.* at 1093 (citation omitted).[9]  This decision notes that, when addressing the request for a stay of proceedings against non-debtors under § 105(a), the Court is required to apply the test used in addressing preliminary injunctions.  *Id.* at 1094.  "In granting or denying such an injunction, a bankruptcy court must consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant."  *Id.* at 1096.[10]  The Court concludes Debtor has failed to satisfy these requirements.

To summarize, preliminary injunction or similar equitable relief has not been shown as reasonably required in connection with Debtor's arguments under the second

---

[9] *Excel Innovations* concerned a chapter 11 debtor's request that the court enter a stay of an arbitration proceeding that involved two non-debtor parties.  The Court addresses Debtor's arguments here, including its reliance on *Excel Innovations*, despite the factual dissimilarities.

[10] The Court of Appeals noted that the first prong of the preliminary injunction inquiry (likelihood of success) necessarily focused on the outcome of a later proceeding and, in the context of the case before it, the most relevant "future proceeding" was the debtor's reorganization.  *Id*.

MEMORANDUM OF DECISION - 7

and third causes of action contending that the prepetition transfers to Raw Pharma constitute preferential transfers or fraudulent transfers under § 547 or § 548 of the Code. Debtor has not shown, *inter alia*, that Defendants would be unable to respond to a judgment on such claims should one be obtained.  Debtor has not established other grounds on which a prejudgment attachment would be warranted as to those two causes of action.

As to the first cause of action, which seeks injunctive relief that would, in effect, unwind the turnover of Debtor's assets and control of its business under the "Transfer Documents" executed on March 11, the Court also finds the showing inadequate.

Under the case law, Debtor must show at least a likelihood, or perhaps a strong likelihood, of success on the merits.  *Excel Innovations* would suggest that a showing of a reasonable likelihood of a successful reorganization is appropriate.  The submissions regarding a plan of reorganization are vague and conclusory.  But the reorganization that Debtor apparently advances, in broad terms, requires its possession of the business assets. Here, that would require Debtor to show that it may be entitled to rescind, negate or otherwise avoid the consequences of the Transfer Documents it entered into.  Debtor's submissions seem to suggest a theory of duress.  But there are limitations under Idaho law on such a contention. *See Primary Heath Network, Inc. v. State, Dept. of Admin.*, 52 P.3d 307, 312 (Idaho 2002).[11] *See also Saint Alphonsus Regional Medical Center, Inc. v.*

---

[11] "A party claiming economic duress must prove that it involuntarily accepted the terms offered by the other party, that the circumstances permitted no other alternative, and that the circumstances were the result of coercive acts of the other party. . . . The assertion of duress must be proven by evidence that
(Continued)

MEMORANDUM OF DECISION - 8

*Krueger*, 861 P.2d 71, 77 (Idaho App. 1992); *Lomas & Nettleton Co. v. Tiger Enterprises, Inc.*, 585 P.2d 949, 953 (Idaho 1978).[12]

While it would be premature to evaluate the entirety of the allegations made by Debtor on this issue, the Court must consider—for purposes of granting the extraordinary ex parte equitable relief sought—whether Debtor has established the "likelihood of success on the merits" required on this cause. Having reviewed the authorities, and all the material that Debtor has provided in support of the Motion,[13] the Court finds this showing has not been made.

As a result, the Court concludes the Ex Parte Motion for Entry of a Pre-judgment Writ of Attachment or Temporary Restraining Order/Motion for Preliminary Injunction, Adv. Doc. No. 2, must be denied. The Court will enter an Order accordingly.

DATED:  March 27, 2019



_____
TERRY L. MYERS
U.S. BANKRUPTCY JUDGE

---

the duress resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities." *Id.* at 312 (citations omitted).

[12] *See also Liebelt v. Liebelt*, 801 P.2d 52, 55 (Idaho App. 1990) ("duress may be established only by clear and convincing proof") (citation omitted).

[13] The Motion was supported by the affidavits of Josh Swenson, Jeremy Swenson, and Debtor's bankruptcy counsel, comprising a total of 76 pages. Adv. Doc. Nos. 2-1, 2-2, 2-3. The Court has also considered the allegations in the Complaint and its attachments comprising 77 pages.

MEMORANDUM OF DECISION - 9